Joshua S. Bauchner, Esq. (#051242013)
Michael H Ansell, Esq. (#014052010)
**ANSELL GRIMM & AARON, P.C.**
365 Rifle Camp Road
Woodland Park, New Jersey  07424
(973) 247-9000 Phone
(973) 247-9199 Facsimile

Robert C. Shea, Esq.
**R.C. SHEA & ASSOCIATES**
 **COUNSELLORS AT LAW**
244 Main Street
P.O. Box 2627
Toms River, NJ 08754-2627
(732) 505-1212 Phone

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **FIDELITY EATONTOWN, LLC** and **QUICKCHEK CORPORATION,**<br><br>        Plaintiffs,<br><br>    v.<br><br>**EXCELLENCY ENTERPRISE, LLC**, **KENNEDY AUTO SERVICE, INC., AND GAS OF EATONTOWN, INC., ABC CORPORATIONS 1-10** (names being fictitious and unknown but described as those corporations associated with Village that assisted with and promoted the use of sham litigations and anticompetitive acts), and **JOHN DOES 1-10** (names being fictitious and unknown but described as those individuals associated with Village that assisted with and promoted the use of sham litigations and anticompetitive acts),<br><br>        Defendants. | Civil Action No.:<br><br><br><br><br><br><br>**COMPLAINT**<br>**AND DEMAND FOR JURY** |

Fidelity Eatontown, LLC ("Fidelity") and QuickChek Corporation ("QuickChek," and with Fidelity, "Plaintiffs"), by and through their undersigned counsel, say:

1.      This is a claim for attempted monopolization of the gas station convenience store market in the Borough of Eatontown, New Jersey.  As is set forth below, Excellency Enterprises, LLC ("Excellency"), Kennedy Auto Service, Inc. ("Kennedy"), and Gas of Eatontown, Inc. ("Gas of Eatontown" and collectively with Excellency and Kennedy, the "Objectors"), along with defendants ABC Corporations 1 through 10 (names being fictitious and unknown but described as those corporations associated with Excellency that assisted with and promoted the use of sham litigations and anti-competitive acts) and John Does 1 through 10 (names being fictitious and unknown but described as those individuals associated with Excellency that assisted with and promoted the use of sham litigations and anti-competitive acts) (collectively with the Objectors, "Defendants") engaged in an ongoing illegal scheme designed to injure competition in the market for gas station convenience stores in the greater Eatontown geographic area and to interfere with Fidelity's site development agreement with a Wawa convenience store with a gasoline dispensing capacity, a Chick-Fil-A fast food restaurant, and an office/retail building with a bank (the "Fidelity Project"), and QuickChek's development of a fresh marketer convenience store with a gasoline dispensing capacity (the "QuickChek Project" and with the Fidelity Project, the "Projects" or individually, a "Project").

2.      By intentionally delaying and seeking to prevent the development and construction of the Projects, including the Plaintiffs' gas station convenience stores, the Defendants would effectively eliminate new competitors in the geographic area providing the goods and services associated with gas station convenience stores. The elimination of fair, robust competition is the sole animating factor behind Defendants' abusive illegal actions described herein.

3.      The essence of any productive market economy is full and fair competition in the marketplace.  Competition drives innovation, technological progress and growth of choice and options in the marketplace.  Robust competition benefits businesses and consumers alike.

4.      The market for gas station convenience stores is not different from any other and it is essential that competitors be allowed to enter the marketplace free from the predatory practices of would-be monopolists.  Here, Defendants have sought to preserve their monopoly position in the greater Eatontown marketplace through a series of calculated and intentional acts designed to impede Plaintiffs' lawful plans to develop a directly competitive gas station convenience store.

5.      These acts include, *inter alia*, sham litigations and frivolous and pre-textual appeals of planning board, governing body, and State agency actions. Defendants' actions are designed to achieve a single illegal anti-competitive objective – preventing the development of a competing gas station convenience store, thereby preserving the monopoly position of Defendants.

6.      As a result of the series of sham petitions and legal actions filed by the Defendants, Plaintiffs also have been forced to pay thousands of dollars toward application fees, expert fees, and attorney fees.  Further, Plaintiffs have suffered lost profits and other costs associated with the delay in construction resulting from Defendants' willful and abusive tactics.

7.      This action is designed to end Defendants' unlawful scheme and to award Plaintiffs compensatory and treble damages in an amount commensurate with Defendants' illegal anti-competitive conduct.

## PARTIES

8.      Plaintiff Fidelity Eatontown, LLC is a New Jersey limited liability company with its principal place of business located at 641 Shunpike Road, in Chatham, New Jersey.

9.      Plaintiff QuickChek Corporation is a New Jersey corporation with its principal place of business located at 3 Old Highway 28, in Whitehouse Station, New Jersey.

10.     Defendant Excellency Enterprise, LLC is a New Jersey limited liability company doing business at 150 State Route 35, in Eatontown, New Jersey.

11.     Defendant Kennedy Auto Service, Inc. is a New Jersey corporation doing business at 130 Main Street and at 150 State Route 35 South, in Eatontown, New Jersey.

12.     Defendant Gas of Eatontown, Inc. is a New Jersey corporation doing business at 24 State Route 35 South, in Eatontown, New Jersey.

13.     Defendants ABC Corporations 1-10 (names being fictitious and unknown but described as those corporations associated with The Objectors that assisted with and promoted the use of sham litigations and anti-competitive acts) and John Does 1-10 (names being fictitious and unknown but described as those individuals associated with The Objectors that assisted with and promoted the use of sham litigations and anti-competitive acts) are corporations and individuals whose names and locations are currently unknown to Plaintiffs.  Plaintiffs will further amend their complaint to allege the true names and capacities of such fictitious and unknown Defendants when ascertained.

## JURISDICTION AND VENUE

14.     This action arises under the federal antitrust laws, 15 U.S.C. §§ 1, 2, and 15, and for violations of New Jersey State law.

15.     This Court has subject matter jurisdiction over this action under at least 28 U.S.C. §§ 1331, 15 U.S.C. § 15, and under the principles of supplemental jurisdiction, 28 U.S.C. § 1367.

16.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 15 U.S.C. §§ 15 and 22 in that The Objectors are registered to do business in New Jersey.  The Objectors

maintain facilities in New Jersey, and have continuous and systematic contacts in New Jersey, including maintaining an office and doing business in New Jersey.  The Objectors are subject to the personal jurisdiction of this Court under the United States Constitution, the laws of the State of New Jersey, and the Federal Rules of Civil Procedure.

**FACTS**

**A.**      **The Relevant Market.**

17.      The business of gas station convenience stores is substantial and affects interstate commerce.

18.      Most people prefer to purchase gas from a dispensing facility affiliated with a convenience store.

19.      Most people prefer this "one stop shopping" experience as it enables them to satisfy multiple purchasing needs at a single location.

20.      Most shoppers have come to expect gas station convenience stores to provide them an array of much needed products and services.  The Grocery section may include canned juices, fruits and vegetables, dog food, baby food, chips, and other various dry-storage goods.  Cigarettes, beer, publications, and snacks will complement the Grocery section.  The Frozen section may include ice cream, dairy products, and chilled wine.  Pharmaceuticals such as first aid products, diapers, non-prescription cold medicines and ointments, pantyhose, toys, and other related products may comprise the Personal Item section.  The Home and Auto section may include insecticides, cleansers, paper products, and small automotive supplies like oil, transmission fluid, fuses, and funnels. The Snack Bar (popcorn, hotdogs, deli items, and fresh produce) and Fuel Island will be additional customer conveniences that will truly render Plaintiffs' facilities full-service convenience stores.

21.     It therefore follows that proximity to both a large population and major thoroughfares defines the value of any particular location for a gas station convenience store that supplies numerous amenities and one-stop shopping because it provides shoppers the ability to quickly arrive at home after conveniently completing all of their shopping at a single location.

22.     Barriers to entry into the greater Eatontown geographic market for gas station convenience stores are high.  The barriers include the need for available, properly zoned property to construct a convenience store with gasoline dispensing facility, the significant financial costs associated with the development of a gas station convenience store, the needs of shoppers, and necessity of preexisting name recognition to attract shoppers.  As more particularly described herein, all of the foregoing makes it difficult for new gas station convenience stores to enter the geographic market.

**B.**     **The Fidelity Project.**

23.     Fidelity anticipates that the Fidelity Project will consist of the development of approximately six acres of land situated at the intersection of State Highway 35 ("Route 35") and Wyckoff Road in the Borough of Eatontown..

24.     The Objectors' facilities are all within two miles of Fidelity's proposed facilities.

25.     Fidelity entered into leases and site development agreements with (i) Wawa for the purpose of construction of a convenience store with a gasoline dispensing capacity; and (ii) Chick-Fil-A for a fast food restaurant.

26.     Pursuant to the agreements, Fidelity bears the burden of obtaining all necessary government approvals for the construction for the Projects.

27.     Pursuant to the agreements, if Fidelity fails to obtain the necessary government approvals by June 1, 2015, Wawa, absent an extension, may nullify the agreements.

28.     If the approvals are not obtained, the Wawa gas station convenience store cannot be built.

29.     If the Wawa cannot be built, Fidelity will lose the substantial value of its agreements and be excluded from the gas station convenience store market.

30.     Defendants are fully aware of these important contractual terms in the agreements for the Projects.

**C.     The QuickChek Project.**

31.     The QuickChek Project is anticipated to involve  the development of the premises known and designated as Lots 1, Block 2302 located on the southbound side of Route 35, northwest of the jug handle and abutting a portion of the former South Street right of way.

32.     The Objectors' facilities are all within two miles of QuickChek's proposed facilities.

33.     QuickChek has secured Preliminary and Final Major Site Plan Approval from the Eatontown Planning Board to construct a QuickChek food store with eight (8) fuel pumps as part of the QuickChek Project.

**D.     The Objectors.**

34.     Excellency is the owner of an Exxon gasoline station located within 2,000 feet of both QuickChek and Fidelity.  As such, Excellency is a direct economic competitor of QuickChek and Fidelity.

35.     Kennedy is an auto repair facility located at Excellency's Exxon property as well as another Exxon property at 130 Main Street in Eatontown, New Jersey.  Kennedy's facilities are located within 2,000 feet of both QuickChek and Fidelity.  As such, Kennedy is a direct economic competitor of QuickChek and Fidelity.

36.     Gas of Eatontown is the owner of a CITGO gasoline station located within one (1) mile of both QuickChek and Fidelity.  As such, Gas of Eatontown is a direct economic competitor of both QuickChek and Fidelity.

**E.     The Objectors' Sham Litigations
        And Other Anti-Competitive Conduct.**

**1.     The Objectors' Challenges To The Fidelity Application.**

37.     On or about November of 2012, Fidelity initially filed an application before the Eatontown Planning Board ("Planning Board") for Preliminary and Final Major Site Plan approval of a Wawa convenience store with a gasoline dispensing capacity.

38.     The application was first heard by the Planning Board in October of 2013 with subsequent hearings in November and December of 2013.

39.     On or about December 16, 2013, the Planning Board voted to approve the variances requested by the Applicant and also to grant Preliminary and Final Site Plan approval.

40.     On February 24, 2014, the Objectors filed an action in lieu of prerogative writs, challenging the actions of the Board, Docket No. MON-L-683-14 (the "Fidelity PW Action").

41.     The Fidelity PW Action claimed that:  (1) the Planning Board violated Objectors' Due Process rights to be heard; (2) by granting a total of at least 29 variances, the Board engaged in impermissible "rezoning by variance"; (3) the Planning Board lacked sufficient credible evidence to grant variances with respect to Borough Ordinance 89-44C(2)(a)[14][h], which provides that "no gasoline filling station be located closer than 2,000 feet to any other filling station or nearer than 200 feet to a residential property or use"; (4) the Planning Board granted the variances despite the applicant's failure to demonstrate compliance with storm water regulations; and (5) the Planning Board's approval of Fidelity's application and its enactment of the written Resolution of Memorialization on January 12, 2013 were arbitrary, capricious and unreasonable..

42.     On or about May 7, 2014, the Court issued a Case Management Order remanding the matter to the Planning Board with instruction to provide an opportunity for the Objectors to be heard and introduce testimony, evidence, and arguments.

43.     On or about July 14, 2014, the Planning Board reconvened pursuant to the Court's remand Order and held a hearing on Fidelity's application regarding the aforementioned multi-use development.  Also, on or about that same date, counsel for Excellency Enterprises LLC provided an objection letter to the Planning Board's attorney as well as to counsel for Fidelity.

44.     The Objectors claimed, *inter alia*, that the Board's grant of the variances, deviations and waivers constituted an illegal "arrogation of legislative authority by effectively replanning and rezoning the site."  The Objectors also claimed that the Board granted approval of a storm water management plan based upon a methodology that had been declared invalid by the Appellate Division.

45.     Upon information and belief, the Objectors knew, or had reason to know, that their challenges were unwarranted and were instead merely a pretext to delay the granting of Fidelity's application.

46.     Upon information and belief, rather than seeking a justifiable legal remedy, the Objectors were motivated by a desire to impose anti-competitive injury by seeking to hinder, obstruct, delay, impede and/or prevent Fidelity from promptly obtaining all necessary government approvals for the construction of its Project.

47.     The Objectors' first order of business was to seek a dismissal of the application on the basis that only the Zoning Board of Adjustment had jurisdiction to grant the necessary variances from certain provisions of the Eatontown Ordinances, specifically, Ordinance 89-44C(2)(a)[14][h], which defines "auto repair and gasoline stations" as a permitted use within the B-2

zone, but with a list of conditions for such use which include a restriction against locating a gasoline filling station or service station within 2,000 feet to any other filling station or 200 feet to any residential zone boundary line.

48.     The Board rejected the Objectors' jurisdictional arguments and determined that it had jurisdiction to proceed.

49.     The Objectors thereafter produced a number of witnesses, necessitating an adjournment, at 10:30 p.m., to August 25, 2014.

50.     In the interim, on or about August 19, 2014, the Objectors filed an application to amend Count One of their February 24, 2014 Complaint to include a challenge to the Planning Board's jurisdiction to review and approve Fidelity's application pursuant to N.J.S.A. 40:55D-70(d)(3), and an Order to Show Cause seeking to enjoin the Planning Board from hearing Fidelity's application.

51.     Upon information and belief, the Objectors knew, or had reason to know, that their jurisdictional challenge was unwarranted and was instead merely a pretext to delay the granting of Fidelity's application.

52.     Upon information and belief, rather than seeking a justifiable legal remedy, the Objectors were motivated by a desire to impose anti-competitive injury by seeking to hinder, obstruct, delay, impede and/or prevent Fidelity from promptly obtaining all necessary government approvals for the construction of its Project.

53.     The Honorable Dennis R. O'Brien, J.S.C. granted the request to amend the Complaint but denied the Order to Show Cause.  The matter was remanded back for the conclusion of testimony so that a complete record would be before the Board.

54.     When the Board reconvened on August 25, 2014, the Objectors' attorney requested another adjournment, to October 27, 2014.

55.     The hearing reconvened on October 27, 2014, at which time both sides presented evidence, and was then again adjourned, to December 8, 2014.

56.     The hearing reconvened on December 8, 2014, at which time both sides presented evidence.

57.     At the conclusion of the hearing, the Board rejected all of the Objectors' arguments and voted to approve the variances.

58.     On December 22, 2014, the Board approved a Resolution "reaffirming preliminary and final major site plan approval as to Wawa and Chick-Fil-A, and preliminary approval as to the commercial building and bank pad."

59.     In the Resolution, the Board explained in detail its assessment of the witnesses who appeared at the subsequent hearings and found that Fidelity satisfied its burden on the requested "c" variances.

60.     In its second Resolution, the Board noted in paragraph 5 "that the pumps were well over 200 feet from the nearest residential line and the reason for the 1000' [sic] feet requirement from another service station was antiquated, and the prior testimony on the issue was sufficient for the Board to grant the variance."

61.     The Board further stated at paragraph 21 that it was "satisfied with the Storm Water Management Plan, based upon the review and approval of its Professional Engineer."

62.     On or about November 14, 2014 Plaintiffs filed a Request for Interpretation with the Borough of Eatontown Zoning Board of Adjustment ("Board of Adjustment").  The Request asked the Board to consider if Ordinance Section 89-44.C(2)(a)(14)(h), which relates to gasoline

stations within 200 feet of another gasoline station, requires an applicant to receive approval of a bulk variance or a use variance pursuant to N.J.S.A. 40:55D-70(1) or (3).

63.     After hearing testimony from the Objectors' expert and from the attorneys for Plaintiffs, the Board of Adjustment determined that the proximity ordinance was in fact a bulk variance.

64.     The determination was appealed by the Objectors to the Trial Court, in the matter entitled Gage Family, LP and Gage II Family, LP v. Borough of Eatontown Zoning Board of Adjustment, Docket No. MON-L-922-15.  This matter ultimately was consolidated with the Fidelity PW Action solely for purposes of arguing the issues of jurisdiction.

65.     The parties submitted briefs and on June 18, 2015 Judge Perri ruled jurisdiction was properly vested with the Borough of Eatontown Planning Board.  The Trial Court also dismissed case MON-L-922-14 with prejudice as the case was moot as a result of the Borough passing an Interim Ordinance and granted QuickChek's Motion to Intervene for appeal purposes as the underlying cases was dismissed.  This matter is currently filed as an appeal with the Appellate Division under Docket A-2677-15T3, which is described in greater detail below.

66.     On December 8, 2014, at the conclusion of testimony and summations, the Board held discussion regarding whether to approve Fidelity's proposed application.  Notably, the Board recognized that the Planning Board had jurisdiction to grant the "C" variances as requested in light of the testimony of the Objectors' experts regarding proximity requirements.

67.     The Fidelity application was processed over the objection of the Objectors.

68.     As explained more fully in Section E(3), *infra*, on or about May 13, 2015, while the Fidelity PW Action was still pending, the Borough adopted Ordinance 07-2015, which added a subsection "K" to Ordinance 89-44C(2)(a)[14], which provides that the standards enumerated in

subsections "A" through "J" are considered "bulk standard" relief, thereby conferring jurisdiction upon the Planning Board to hear any such application for relief.

69.     On or about June 29, 2015, the Court issued an Order finding Count One of the Objectors' Amended Complaint to be moot based upon the adoption of Ordinance 07-2015.

70.     The Fidelity PW Action was tried before the Honorable Judge Jamie S. Perri, J.S.C on August 25, 2015.

71.     By Order dated January 22, 2016, Judge Perri dismissed the Fidelity PW Action finding, *inter alia*, "that there was ample evidence in the record supporting the Board's findings and that its actions were not, as a matter of fact and law, arbitrary, capricious or unreasonable."

72.     In doing so, the Court addressed, and rejected, each and every one of the Objectors' arguments.

73.     With respect to Borough Ordinance 89-44C(2)(a)[14][h], the Court held:

Given the considerable deference that is to be afforded to the Board's findings, this court cannot find that its actions were arbitrary and capricious in granting the variance from the strict requirements of Borough Ordinance 89-44C(2)(a)[14][h].

74.     With respect to the issue of "Spot Zoning" the Court held:

The Resolutions as a whole reflect the considerable evidence that was presented to the Board and the Board's determination that the positive benefit of developing an unsightly former motor home park and lube station with modern, aesthetically presented and landscaped businesses outweighed any detriment necessitated by the variances required by the particular types of businesses that would operate on the site. The Board's actions were consistent with Borough's Master Plan of developing a vibrant commercial corridor on Route 35 and cannot be viewed as prohibited "spot zoning" which benefited the property owner only.

75.     With respect to the Stormwater Plan the Court held:

In this matter, the Board was presented with detailed testimony and voluminous documents regarding Fidelity's stormwater plan as well as the critique of the plan offered by the plaintiffs. The Board had the opportunity, over several days of hearings, to assess the credibility of the witnesses and to weigh their testimony in light of the Board's own peculiar knowledge of the site and its proposed

redevelopment. Multiple revisions to the plan were submitted to address certain concerns and to achieve a compliant plan. The court finds that Board's decision "comports with the statutory criteria and is founded on adequate evidence." <u>Davis v. Planning Bd. Of City of Somers Point</u>, 327 N.J. Super. 535, 542 (2000).

**2.     The Objectors' Challenges To The QuickChek Application.**

76.     On or about October 15, 2014, QuickChek filed its application and plans before the Eatontown Planning Board for Preliminary and Final Major Site Plan for the construction of a QuickChek.

77.     The Board Engineers determined that the use proposed by QuickChek was permitted within the B-2 Business Zone, which permits retail, fast food, and gasoline station uses.

78.     The Board Engineers also identified the required bulk variances and waivers pursuant to their review of the plans, knowledge of the Eatontown Code and experience in the interpretation of the zoning requirements of the B-2 Business Zone.

79.     On or about December 9, 2014 QuickChek filed a revised Site Plan and submitted its plans with respect thereto to the Zoning Officer.

80.     The Board Engineers again determined that the use proposed by QuickChek was permitted within the B-2 Business Zone. The December review letter also identified the required bulk variances and waivers pursuant to the Board Engineers' review of the plans, knowledge of the Eatontown Code and experience in the interpretation of the zoning requirements of the B-2 Business Zone.

81.     QuickChek appeared before the Planning Board on December 22, 2014, March 16, 2015, June 1, 2015 and July 6, 2015.

82.     Excellency appeared through counsel in opposition to QuickChek's application.

83.     As explained more fully in Section E(3), *infra*, on or about May 13, 2015, while QuickChek's application was still pending before the Planning Board, the Borough adopted

Ordinance 07-2015, which added a subsection "K" to Ordinance 89-44C(2)(a)[14], which provides that the standard enumerated in subsections "A" through "J" are considered "bulk standard" relief thereby conferring jurisdiction upon the Planning Board to hear any such application for relief.

84.     On or about August 3, 2015, the Planning Board memorialized a Resolution of Approval of QuickChek's application for Preliminary and Final Major Site Plan Approval.

85.     On or about September 11, 2015, Excellency filed an action in lieu of prerogative writs against the Planning Board and QuickChek, Docket No. MON-L-3489-15 (the "QuickChek PW Action").

86.     The QuickChek PW Action claimed that:  (1) the Planning Board lacked sufficient credible evidence to grant variances with respect to Borough Ordinance 89-44C(2)(a)[14][h], which provides that "no gasoline filling station be located closer than 2,000 feet to any other filling station or nearer than 200 feet to a residential property or use"; (2) the Planning Board lack sufficient credible evidence to grant variances with respect to impervious coverage and minimum front yard setback requirements; (3) the Planning Board failed to make clear and specific findings that the variances and/or waivers could be granted without substantial detriment to the public good; (4) QuickChek failed to introduce evidence to satisfy the negative and positive criteria; (5) the Planning Board's approval of QuickChek's application and its enactment of the written Resolution of Memorialization on August 3, 2015 were arbitrary, capricious and unreasonable; (6) the Planning Board lacked authority to allow QuickChek to clarify its fire lane proposals as a condition of approval; (7) the Planning Board lacked sufficient information to determine the safety and sufficiency of the traffic circulation on the site and the ingress/egress; and (8) the Planning Board erred in adjourning the application for a vote from June 1, 2015 until July 6, 2015 when a quorum

was present and the adjournment request was granted by the Vice Chairman without placing the request to a motion to adjourn to be voted on by all present members of the Planning Board.

87.     On or about March 11, 2016, the Court entered an Order consolidating the QuickChek PW Action with another pending matter filed by Excellency against the Borough of Eatontown challenging the validity of Ordinance 7-2015, captioned Excellency Enterprise, LLC v. Borough Council of the Borough of Eatontown, et al., Docket No. MON-L-2214-15 PW (the "Eatontown Ordinance PW Action" and together with the QuickChek PW Action, the "Consolidated PW Action").

88.     The matters were set for conference on April 5, 2016, wherein a Case Management Order was discussed to set dates for the exchange of discovery and the submission of briefs regarding the procedural legal challenges to the Ordinance.  Pursuant to the Court's instructions, the Eatontown Planning Board attorney submitted a Case Management Order on May 12, 2016, which was consistent with the discussions with the Court.  The cover letter attached to this Order clearly indicated that Plaintiff failed to articulate the need and area of an expert report and, therefore, dates for the submission of expert reports were not included in the Order.

89.     On May 17, 2016, Defendants objected to the proposed Order and submitted an entirely new Order, which was inconsistent with any of the discussions and scheduling time frames set by the Court at the conference.  Defendants unilaterally included items concerning expert reports in express contravention of the discussion at the Case Management Conference and without consent of counsel or the Court.

90.     Additionally, Defendants' form of Order delayed the briefing schedule and trial dates by approximately 120 days.  To date the Court has not signed any Order, however, on June 24, 2016, Defendants nevertheless submitted a 100 page expert report from a planner, Gordon

Gemma, to be utilized at the time of trial.  Mr. Gemma is the same expert who testified at the Interpretation hearing before the Board of Adjustment as detailed above.

91.     The Court set a trial date of July 19, 2016 for the Eatontown Ordinance PW Action, with the QuickChek PW Action to be tried thereafter.

92.     Without any justifiable excuse, and for no other reason than to cause additional delay to QuickChek, Excellency sought to delay the trial of the Eatontown Ordinance PW Action until sometime after October 15, 2016.

93.     To date, the Court has yet to rule on Excellency's proposed trial date.

**3.     Excellency's Appeal of the Borough's Ordinance.**

94.     On May 13, 2015, the Council held a public hearing, voted, and adopted Ordinance 07-2015. However, before the vote took place the Mayor and Ms. Baker, the Borough Attorney, held a thorough discussion on the record regarding the purpose of Ordinance 07-2015's adoption:

> MAYOR CONNELLY: Okay. And just for clarification, the proximity ordinance is about the distance that a gas station is allowed to be from one to the other, from an existing gas station to another gas station, and also placing of a gas station to a residence. Correct?
>
> MS. BAKER: Yeah. And then Ordinance 07-2015 clarifies that the section that the Mayor just referenced, that any deviation from those standards of the Code shall be considered bulk standard relief and not relief required under N.J.S.A. 40:55D-70(d), which would need a use variance.

95.     The Ordinance amended Section 89-44.C(2)(a)[14][h] and included a new subsection (K) which states, "Any deviation from the standards enumerated in section (a) through (j) above shall be considered 'Bulk Standard' relief and not relief required under N.J.S.A. 40:55-70(d)."

96.     The Ordinance was adopted by the Borough on or about May 13, 2015.

97.     On June 12, 2015, Excellency commenced the Eatontown Ordinance PW Action while its initial complaint against the Planning Board and Fidelity was still pending, and while QuickChek's application was still pending before the Planning Board.

98.     The Eatontown Ordinance PW Action alleges:   (1) the action taken by the Borough's adoption of Ordinance 07-2015 was arbitrary, capricious and unreasonable; (2) Ordinance 07-2015 constitutes an amendment to the Master Plan; (3) Ordinance 07-2015 constitutes rezoning of the property affected by the Ordinance; (4) Ordinance 07-2015 fails to meet the requirements of the Municipal Land Use Law standard and requirements for the creation of a new zone; and (5) the passage of the Ordinance was contrary to law and thus renders the Ordinance invalid.

99.     On or about July 17, 2015, the Objectors served their second complaint on the Borough of Eatontown challenging the validity of Ordinance 07-2015.

100.    On or about August 28, 2015 and September 15, 2015, QuickChek and Fidelity, respectfully, filed motions to intervene to protect and enforce their rights, pursuant to N.J.C.R. 4:33-1.

101.    Plaintiffs' applications were granted by Order entered on September 23, 2015.

102.    On or about January 6, 2016, QuickChek issued a letter to counsel to the Objectors advising that the Objectors' actions violated New Jersey Rule of Court 1:4-8 and New Jersey's Frivolous Litigation Act, N.J.S.A. 2A:15-59.

103.    On or about January 25, 2016, Fidelity issued a letter to counsel to the Objectors similarly advising that the Objectors' actions violated New Jersey Rule of Court 1:4-8 and New Jersey's Frivolous Litigation Act, N.J.S.A. 2A:15-59.

104.    In doing so, Plaintiffs specifically advised the Objectors that their anticompetitive conduct would result in the instant federal antitrust action in accord with the recent decision of the Third Circuit Court of Appeals, *Hanover 3201 Realty, LLC. v. Village Supermarkets, Inc.*, 806 F.3d 162 (3d Cir. 2015), which upheld a developer's claims arising out of the sham litigations and other anticompetitive acts undertaken by an objector -- akin to those actions taken by Defendants here -- to unlawfully block development.

105.    The Objectors failed to respond to either letter.

106.    Upon information and belief, the Objectors knew, or had reason to know, that their challenges were unwarranted and were instead merely a pretext to delay Plaintiffs.

107.    In fact, the Objectors' prerogative writ actions are nothing more than a repackaging of their various improper administrative challenges discussed above.  The repetition of putative violations in yet another forum is blatant harassment designed to eliminate or delay competition.

108.    Upon information and belief, rather than seeking a justifiable legal remedy, the Objectors' prerogative writ actions were motivated by a desire to impose anti-competitive injury by seeking to hinder, obstruct, delay, impede and/or prevent Plaintiffs from promptly obtaining all necessary government approvals for the construction of their respective Projects.

**4.    <u>The Objectors' Ongoing Appeals Of Their Failed Prerogative Writ Actions</u>.**

109.    On or about March 8, 2016, Objectors filed a Notice of Appeal of the Court's Opinion and Order in the Fidelity PW Action, alleging that the trial court erred by:  (1) accepting the Planning Board's jurisdiction; (2) classifying proximity ordinances as bulk variances; (3) sustaining the Planning Board's action of "rezoning by variance" by affirming the grant of 31 variances without substantial credible evidence of the positive and negative criteria; (4) affirming

the Planning Board's shifting of the burden of proof from Fidelity to the Objectors; (5) excusing the Planning Board's failure to make the requisite findings of facts to sustain the award of variances; (6) accepting the Planning Board's findings of fact and conclusions; (7) concluding that Fidelity's storm water expert had adequately supported his position; (8) affirming the Planning Board's acceptance of Fidelity's storm water management plan; (9) giving deference to the Planning Board's disregard of Borough's proximity ordinance; (10) giving deference to the Planning Board's finding that safety concerns associated with gas stations had been addressed since the proximity ordinance was enacted; (11) giving deference to the Planning Board's finding regarding the distance and buffers between Fidelity's property and the nearest properties; (12) considering only a narrowly defined concept of the Borough's Master Plan and in finding that the Planning Board's actions were consistent with the Borough's Master Plan; (13) affirming the Reaffirming Resolution accepting the Planning Board's engineer's statement of acceptance of Fidelity's storm water management plans; and (14) affirming the Planning Board's evaluation of traffic impact formulas.

110.    In June of 2016, the Objectors' requested and obtained an automatic thirty (30) day extension of the deadline to perfect their appeal and then, days before the extended deadline, filed a motion seeking yet more time to perfect their appeal.  The filing of the motion tolled the briefing deadline permitting further delay.

111.    Upon information and belief, the extension requests were motivated by a desire to impose anti-competitive injury by seeking to hinder, obstruct, delay, impede and/or prevent Plaintiffs from promptly obtaining all necessary government approvals for the construction of their respective projects.

112.     On or about June 24, 2016, the Objectors additionally filed a Motion to Supplement Administrative Record on Appeal seeking to add to the appellate record documents they have had in their possession since at last 2012, relating to the fully litigated and resolved D variance issue.

113.     Upon information and belief, the Motion was motivated by a desire to impose anti-competitive injury by seeking to hinder, obstruct, delay, impede and/or prevent Plaintiffs from promptly obtaining all necessary government approvals for the construction of their respective projects.

## FIRST COUNT
**(Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 Sham Litigation: Monopolization, Attempted Monopolization, and Conspiracy to Monopolize)**

114.     Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

115.     Defendants' conduct, as described in detail above, violates Section 2 of the Sherman Act, 15 U.S.C. § 2 because they engaged in predatory or anti-competitive conduct with a specific intent to monopolize the gas station convenience store market.

116.     Upon information and belief, when the Objectors pursued their jurisdictional challenge, challenge to Section 89-44.C(2)(a)[14][h], spot zoning challenge, storm water challenge, and traffic impacts challenge before the Planning Board, when they renewed those same, failed challenges in their prerogative writ actions which were also rejected, and having now again pursued those same, failed challenges on appeal, they knew or should have known that they did not have a legitimate interest in pursuing these challenges and that they were objectively baseless.

117.    By pursuing objections known to be baseless and unfounded, Defendants intended to acquire and maintain monopoly power in the greater Eatontown geographic market for gas station convenience stores.

118.    Upon information and belief, the Objectors were motivated by a desire to impose anti-competitive injury on Plaintiffs by delaying the development of their respective Projects so that they would not be built, thereby preventing Plaintiffs from entering the market for gas station convenience stores in the greater Eatontown area, rather than being motivated to obtain a justifiable remedy.

119.    Unless the baseless challenges are withdrawn and/or dismissed, there is a dangerous probability that Defendants will acquire monopoly power because of their dominant position in the relevant market, the high entry barriers in the market, and the absence of other competitors.

120.    By eliminating the Plaintiffs' Projects in the greater Eatontown area, Defendants will have eliminated the only competitors entering the relevant gas station convenience store market, resulting in Defendants having monopolistic power in the relevant market.

121.    Fidelity's injuries are inextricably intertwined with those suffered by Wawa because the anticompetitive actions of Defendants are directed toward preventing Fidelity from developing its Project as a gas station convenience store where the proposed Wawa will be an anchor tenant. Given the high barriers to entry in the gas station convenience store market if the development of the Project is delayed sufficiently, as a practical matter, Fidelity will have no other place to construct and operate a gas station convenience store market in the greater Eatontown area to compete with Defendants.

122.    Further, by targeting the various rules necessary for Plaintiffs to develop their respective sites, the actions of Defendants are intended to not only preclude Plaintiffs from

developing their Projects, but also to present Plaintiffs from developing their sites for any other gas station convenience store which could compete with Defendants in the relevant geographic market.

123.    Defendants' intent in filing the various baseless challenges set forth above is to delay the approvals necessary to build the proposed gas station convenience stores so that Plaintiffs give up building, operating and/or leasing their stores, as well as to set an example for other potential entrants into the gas station convenience store market to deter them from likewise attempting to build or operate a gas station convenience store located at Plaintiffs' sites or other locations within the greater Eatontown geographic area which might compete with Defendants.

124.    Defendants also have intentionally and willfully conspired with other as yet unknown corporations and individuals to monopolize the market by way of the acts set forth above, including developing a business strategy with other corporations and individuals that they associated with to gain and/or maintain monopoly power in the relevant market through the use of sham litigations and other anticompetitive conduct.  A substantial amount of commerce has been affected by the conspiracy to monopolize.

125.    As a result of the unlawful acts of Defendants as described above, Plaintiffs have suffered and will continue to suffer antitrust injury in an amount to be determined at trial, including hindering, impeding, delaying, obstructing, and/or preventing Plaintiffs from promptly obtaining all necessary government approvals for the construction of their respective Projects and thereby injuring, impeding, delaying, obstructing, and/or preventing Plaintiffs from realizing the financial benefits of their proposed Projects. In addition Defendants' conduct has forced Plaintiffs to expend substantial amounts of money, time, and human resources in order to respond to the baseless challenges.

## SECOND COUNT
### (New Jersey State Antitrust: Sham Litigation)

126.    Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

127.    Defendants' conduct, as described in detail above, violates the New Jersey Antitrust Act, N.J.S.A. 56:9-1, *et seq.*, because they engaged in predatory or anti-competitive conduct with a specific intent to monopolize the gas station convenience store market.

128.    Upon information and belief, when the Objectors pursued their jurisdictional challenge, challenge to Section 89-44.C(2)(a)[14][h], spot zoning challenge, storm water challenge, and traffic impacts challenge before the Planning Board, when they renewed those same, failed challenges in their prerogative writ actions which were also rejected, and having now again pursued those same, failed challenges on appeal, they knew or should have known that they did not have a legitimate interest in pursuing these challenges and that they were objectively baseless.

129.    By pursuing objections known to be baseless and unfounded, Defendants intended to acquire and maintain monopoly power in the greater Eatontown geographic market for gas station convenience stores.

130.    Upon information and belief, the Objectors were motivated by a desire to impose anti-competitive injury on Plaintiffs by delaying the development of their respective Projects so that they would not be built, thereby preventing Plaintiffs from entering the market for gas station convenience stores in the greater Eatontown area, rather than being motivated to obtain a justifiable remedy.

131.     Unless the baseless challenges are withdrawn and/or dismissed, there is a dangerous probability that Defendants will acquire monopoly power because of their dominant position in the relevant market, the high entry barriers in the market, and the absence of other competitors.

132.     By eliminating Plaintiffs' projects from the greater Eatontown area, Defendants will have eliminated the only competitors entering the relevant gas station convenience store market, resulting in Defendants having monopolistic power in the relevant market.

133.     Fidelity's injuries are inextricably intertwined with those offered by Wawa because the anticompetitive actions of Defendants are directed toward preventing Fidelity from developing its Project as a gas station convenience store where the proposed Wawa will be an anchor tenant. Given the high barriers to entry in the gas station convenience store market if the development of the Project is delayed sufficiently, as a practical matter, Fidelity will have no other place to construct and operate a gas station convenience store market in the greater Eatontown area to compete with Defendants.

134.     Further, by targeting the various rules necessary for Plaintiffs to develop their respective sites, the actions of Defendants are intended to not only preclude Plaintiffs from developing their projects, but also to prevent Plaintiffs from developing their sites for any other gas station convenience store which could compete with Defendants in the relevant geographic market.

135.     Defendants' intent in filing the various baseless challenges set forth above is to delay the approvals necessary to build the proposed gas station convenience stores so that Plaintiffs give up building, operating and/or leasing their stores, as well as to set an example for other potential entrants into the gas station convenience store market to deter them from likewise

attempting to build or operate a gas station convenience store located at Plaintiffs' sites or other locations within the greater Eatontown geographic area which might compete with Defendants.

136.   Defendants also have intentionally and willfully conspired with other as yet unknown corporations and individuals to monopolize the market by way of the acts set forth above, including developing a business strategy with other corporations and individuals that they associated with to gain and/or maintain monopoly power in the relevant market through the use of sham litigations and other anticompetitive conduct.  A substantial amount of commerce has been affected by the conspiracy to monopolize.

137.   As a result of the unlawful acts of Defendants as described above, Plaintiffs have suffered and will continue to suffer antitrust injury in an amount to be determined at trial, including hindering, impeding, delaying, obstructing, and/or preventing Plaintiffs from promptly obtaining all necessary government approvals for the construction of their respective Projects and thereby injuring, impeding, delaying, obstructing, and/or preventing Plaintiffs from realizing the financial benefits of their proposed Projects. In addition Defendants' conduct has forced Plaintiffs to expend substantial amounts of money, time, and human resources in order to respond to the baseless challenges.

### THIRD COUNT
**(Tortious Interference with Prospective Economic Advantage)**

138.   Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

139.   There exist certain business relationships and/or opportunities between Plaintiffs and other non-parties relating to, among other issues, sales through the use of Plaintiffs' gasoline stations and convenience stores.

140.   Defendants are aware of such relationships and prospective economic opportunity.

141.   Through their actions, Defendants maliciously intend to cause or otherwise prevent Plaintiffs from benefitting from such business relationships.  Such conduct is without basis.

142.   As a result, Plaintiffs have been damaged in an amount to be proven at trial.

## FOURTH COUNT
### (Tortious Interference with Contract - Wawa Development Agreement)

143.   Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

144.   Fidelity and Wawa have a valid and binding Lease Agreement that requires Fidelity to develop the Fidelity Project for Wawa's gasoline station and convenience store in exchange for Wawa's payment to Fidelity for the use and occupancy of the Fidelity Project.

145.   Defendants are aware of the Lease Agreement between Fidelity and Wawa.

146.   Through their actions, Defendants maliciously intend to cause or otherwise prevent Fidelity from benefitting from the Lease Agreement.  Such conduct is without basis.

147.   As a result, Fidelity has been damaged in an amount to be proven at trial.

## FIFTH COUNT
### (Civil Conspiracy)

148.   Plaintiffs incorporate by reference the allegations set forth above as though fully set forth herein.

149.   Defendants, acting in concert or pursuant to a common plan or design, actively participated in, aided, encouraged, or ratified the unlawful conduct set forth above.

150.   Defendants acted maliciously and with the sole purpose of harming Plaintiffs.

151.    By virtue of Defendants' misconduct, Plaintiffs have been harmed and damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs Fidelity Eatontown, LLC and QuickChek Corporation hereby demand relief against Defendants Excellency Enterprises, LLC, Kennedy Auto Service, Inc., and Gas of Eatontown, Inc., as follows:

A.    An award of compensatory damages in an amount to be determined at trial;

B.    A finding that Defendants violated Section 2 of the Sherman Act, 15 U.S.C. § 2, and awarding treble damages pursuant to 15 U.S.C. § 15;

C.    A finding that Defendants violated the New Jersey Antitrust Act, N.J.S.A. 56:9-1 et seq., and awarding treble damages pursuant to N.J.S.A. 56:9-12;

D.    A permanent injunction enjoining Defendants from monopolizing or attempting to monopolize the relevant geographic market, pursuant to 15 U.S.C. § 26 and N.J.S.A. 56:9-10;

E.    An award of punitive damages in an amount to be determined at trial as a result of the willful and intentional acts of Defendants and their representatives, agents and employees;

F.    An award to Plaintiffs of their costs, expenses, and reasonable attorneys' fees in connection with this action; and

G.    Such further and additional relief as the Court deems just and proper.

Dated:  Woodland Park, New Jersey           ANSELL GRIMM & AARON, P.C.
        June 29, 2016

                                    By: _____
                                        Joshua S. Bauchner, Esq.
                                        Michael H Ansell, Esq.
                                        365 Rifle Camp Road
                                        Woodland Park, New Jersey  07424
                                        (973) 247-9000
                                        (973) 247-9199 facsimile
                                        jb@ansellgrimm.com

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that the matter in controversy is not the subject of any other action pending in this or any other court, other than as set forth above.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the plaintiff seeks damages in excess of $150,000 and injunctive relief.

Dated:  Woodland Park, New Jersey          ANSELL GRIMM & AARON, P.C.
        June 29, 2016

                                   By: _____
                                       Joshua S. Bauchner, Esq.
                                       Michael H Ansell, Esq.