NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| FIDELITY EATONTOWN, LLC and QUICKCHEK CORPORATION, | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : : | Civil Action No. 3:16-cv-3899-BRM-LHG |
| EXCELLENCY ENTERPRISE, LLC, KENNEDY AUTO SERVICE, INC., and GAS OF EATONTOWN, INC., et al., | : : : : : | OPINION |
| Defendants. | : : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are the following motions: (1) Defendant Excellency Enterprise's ("Excellency") Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 13-1); and (2) Plaintiffs Fidelity Eatontown ("Fidelity") and QuickChek Corporation's ("QuickChek") (collectively, "Plaintiffs") Motion to Dismiss Defendant Kennedy Auto Service's ("Kennedy") Counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 16). Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument.[1] For the reasons set forth herein, Excellency's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Plaintiffs' Motion to Dismiss is **GRANTED**.

---

[1] On January 5, 2017, the parties appeared before the Court for a settlement conference and were directed to discuss a settlement. (ECF No. 23.) The parties did not reach a settlement.

I. BACKGROUND

For the purpose of Excellency's Motion to Dismiss, the Court accepts the factual allegations in the Complaint (ECF No. 1) as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). For the purpose of Plaintiffs' Motion to Dismiss Kennedy's Counterclaim, the Court accepts the factual allegations in the Answer (ECF No. 12) as true and draws all inferences in the light most favorable to Kennedy. *See id.*

Plaintiffs allege Excellency, Kennedy, and Gas of Eatontown, Inc. ("Gas of Eatontown") (collectively, "Defendants") conducted an illegal scheme of sham litigation and anticompetitive acts to interfere with Plaintiffs' respective development projects in the Borough of Eatontown, New Jersey ("Eatontown"), which would compete with Defendants' businesses, also located in Eatontown. (ECF No. 1 ¶ 1.) Fidelity is a New Jersey limited liability company and real estate developer. (*Id.* ¶¶ 1, 8.) Fidelity's proposed development (the "Fidelity Project") would include a Wawa convenience store/gas station and a Chick-Fil-A fast food restaurant on roughly six acres of land at the intersection of State Highway 35 and Wyckoff Road. (*Id.* ¶¶ 23, 25.) QuickChek is a New Jersey corporation that operates convenience store/gas station locations. (*Id.* ¶¶ 1, 9.). QuickChek's proposed development (the "QuickChek Project") would consist of a food store and eight fuel pumps on the southbound side of State Highway 35 near the former South Street right of way. (*Id.* ¶¶ 31, 33.) Defendants each own and/or operate a gas station within a mile of the sites of Plaintiffs' proposed developments. (*Id.* ¶¶ 34-36.)

**A. Defendants' Challenges to the Fidelity Project**

On or about November 2012, Fidelity applied to the Eatontown Planning Board ("Planning Board") for Preliminary and Final Major Site Plan approval of a Wawa convenience store/gas

2

station. (*Id.* ¶ 37.) On or about December 16, 2013, after several hearings, the Planning Board approved the variances Fidelity sought and granted Preliminary and Final Site Plan Approval. (*Id.* ¶¶ 38-39.) On February 24, 2014, Defendants filed an action in lieu of prerogative writs in the Superior Court of New Jersey, Monmouth County, alleging the Planning Board's decision was improper because, *inter alia*: the variances constituted "rezoning by variance"; the Planning Board violated Defendants' due process rights to be heard; and the approval was arbitrary, capricious, and unreasonable. (*Id.* ¶¶ 40-41.) The action in lieu of prerogative writs began a series of challenges which led to roughly a dozen hearings, filings, and decisions before the Planning Board, the Eatontown Zoning Board of Adjustment ("Zoning Board"), and in the Superior Court over the course of twenty-three months. (*Id.* ¶¶ 42-75.) Each of Defendants' challenges has been unsuccessful. (*Id.*) Defendants' appeal of the Superior Court's dismissal of their prerogative writs action is ongoing and has included several requests for extensions and motions that have delayed the appeal. (*Id.* ¶¶ 109-13.)

**B. Defendants' Challenges to the QuickChek Project**

On or about October 15, 2014, QuickChek applied to the Planning Board for Preliminary and Final Major Site Plan approval of a QuickChek store. (*Id.* ¶ 76.) The Board Engineer determined the project's proposed use was permitted in the zone, and it identified the bulk variances and waivers required for the project. (*Id.* ¶¶ 77-78.) On or about December 9, 2014, QuickChek filed a revised site plan with the Zoning Officer. (*Id.* ¶ 79.) QuickChek appeared before the Planning Board on December 22, 2014, March 16, 2015, and July 6, 2015, and Excellency's counsel attended the hearings to challenge the application. (*Id.* ¶¶ 81-82.) On May 13, 2015, while QuickChek's application was pending before the Planning Board, the Eatontown Borough Council (the "Council") passed Ordinance 07-2015 (the "Ordinance") that gave the Planning Board

3

jurisdiction to hear applications for relief from parties seeking bulk variances. (*Id.* ¶¶ 68, 83.) On or about August 3, 2015, the Planning Board approved QuickChek's application for Preliminary and Final Major Site Plan approval. (*Id.* ¶ 84.) On or about September 11, 2015, Excellency filed a second action in lieu of prerogative writs, alleging the Planning Board's decision was improper because, *inter alia*: the Planning Board lacked sufficient credible evidence to grant variances with respect to an Eatontown ordinance governing the distances a gas station must be from other gas stations and from residential property; the Planning Board lacked sufficient information to determine the safety of traffic circulation on the site; and the approval was arbitrary, capricious, and unreasonable. (*Id.* ¶¶ 85-86.) Plaintiffs allege Defendants engaged in a series of tactics during the second prerogative writs action that delayed the action for months, such as submitting a proposed case management order that disregarded the terms the parties discussed at a case management conference and seeking to delay the trial. (*Id.* ¶¶ 88-92.) The trial in the action in lieu of prerogative writs has yet to be scheduled. (*Id.* ¶ 93.)

**C. Defendants' Challenge to the Ordinance**

On June 12, 2015, Excellency commenced an action in lieu of prerogative writs challenging the Ordinance on several grounds, including: (1) the adoption of the Ordinance was arbitrary, capricious, and unreasonable; (2) the Ordinance constitutes an amendment of Eatontown's Master Plan; and (3) the Ordinance constitutes rezoning of the property it affects. (*Id.* ¶¶ 97-98.) On or about August 28, 2015, and September 15, 2015, QuickChek and Fidelity, respectively, moved to intervene in the action to protect and enforce their rights. (*Id.* ¶ 100.) In January 2016, QuickChek and Fidelity sent separate letters to Defendants advising them the action violated New Jersey Rule of Court 1:4-8 and New Jersey's Frivolous Litigation Act, N.J.S.A. § 2A:15-59. (*Id.* ¶¶ 102-03.) Defendants did not respond to either letter. (*Id.* ¶ 105.)

On June 29, 2016, Plaintiffs filed their Complaint in this action asserting claims for: (1) violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, including monopolization, attempted monopolization, and conspiracy to monopolize (*id.* ¶¶ 114-25); violations of the New Jersey Antitrust Act, N.J.S.A. § 56:9-1, *et seq.* (*id.* ¶¶ 126-37); (3) tortious interference with prospective economic advantage (*id.* ¶¶ 138-42); (4) tortious interference with contract (*id.* ¶¶ 143-47); and (5) civil conspiracy (*id.* ¶¶ 148-51).

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more

than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION—EXCELLENCY'S MOTION TO DISMISS[2]

#### A. Monopolization Claim[3] (Count One)

A claim for monopolization pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, consists of (1) the possession of monopoly power and (2) "willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992) (citation omitted). "Monopoly power is the ability to control prices and exclude

---

[2] The Court reviewed and considered the parties' letters to the Court regarding *Inserra Supermarkets, Inc. v. Stop & Shop Supermarket, Co., LLC*, No. 16-01697, 2017 WL 773876 (D.N.J. Feb. 28, 2017) and *Sumas v. Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, Docket No. A-3238-15T3, (N.J. Super. Ct. App. Div. April 12, 2017). (ECF Nos. 25-27.) The Court finds the cases instructive but not dispositive, particularly in light of the fact-intensive nature of an antitrust claim. *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 318 (3d Cir. 2007).

[3] Plaintiffs assert claims for monopolization, attempted monopolization, and conspiracy to monopolize pursuant to Section 2 of the Sherman Act in the First Count of the Complaint. (ECF No. 1 ¶¶ 114-25.) As the elements differ for each claim, the Court will analyze them separately even though they were pled together as a single count.

competition in a given market." *Broadcom Corp.*, 501 F.3d at 307 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). The second element of a claim for monopolization—willful acquisition or maintenance of monopoly power—requires the possession of monopoly power to be "accompanied by some anticompetitive conduct on the part of the possessor." *Id.* (citing *Verizon Commcn's Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004)).

Excellency argues Plaintiffs' claim for monopolization should be dismissed, because Plaintiffs have not pled Defendants possess monopoly power. (ECF No. 13-1 at 7-8.) Plaintiffs effectively concede their failure to properly plead a claim for monopolization, arguing they do not need to allege Defendants have a monopoly in order to plead there is an attempt to monopolize. (ECF No. 15 at 5.)

Therefore, Excellency's Motion to Dismiss Plaintiffs' claim for monopolization is **GRANTED**.

### B. Attempted Monopolization Claim (Count One)

A plaintiff asserting a claim for attempted monopolization pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, must allege: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (citation omitted). To show a dangerous probability of achieving monopoly power, a plaintiff must define "the relevant market and examin[e] . . . market power." *Id.* at 455. The relevant market includes products that are "reasonably interchangeable," which "implies that one product is roughly equivalent to another for the use to which it is put." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.* 124 F.3d 430, 437 (3d Cir. 1997) (citation omitted). "A predominant share of the market, or a lesser market share combined with other relevant factors, may suffice to demonstrate

7

monopoly power." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 201 (3d Cir. 1992) (citing *Weiss v. York Hosp.*, 745 F.2d 786, 827 n.72 (3d Cir. 1984)).

Excellency concedes Plaintiffs have pled anticompetitive conduct, but it argues Plaintiffs have not met the pleading standard for an attempted monopolization claim because they "failed to plead *any* facts at all going to whether Excellency has any monopoly or power at all in the alleged market." (ECF No. 17 at 3.) A plaintiff can plead a claim for attempted monopoly, however, without identifying defendant's specific share of the market. *Broadcom Corp.*, 501 F.3d at 319 (denying a motion to dismiss despite plaintiff's failure to allege defendant's market share). A plaintiff can demonstrate "anticompetitive practices, barriers to entry, the strength of competition, the probable development of the industry, and the elasticity of consumer demand . . ." *Id.* at 318 (citation omitted).

Here, Plaintiffs allege a variety of factors that could demonstrate Defendants have a dangerous probability of achieving a monopoly. Plaintiffs allege numerous examples of Defendants' anticompetitive conduct. (ECF No. 1 ¶¶ 40-41, 44, 47-50, 54, 63-64, 66-67, 99, 109-110, 112.) Plaintiffs allege in detail that the barriers for gas stations to enter the market in Eatontown are high, noting factors such as "the need for available, properly zoned property" and "significant financial costs associated with the development of a gas stations convenience store." (*Id.* ¶ 22.) Finally, Plaintiffs allege Defendants have a "dominant position in the relevant market" and allege an "absence of other competitors." (*Id.* ¶ 119.) Plaintiffs need not allege Defendants possess a specific percentage of the market share, but there must be an allegation of market share. *See Fineman*, 980 F.2d at 201 (citing *Weiss*, 745 F.2d at 827 n.72). Further, dismissal is not appropriate unless it is "clear on the face of the complaint that the 'dangerous probability' standard

cannot be met as a matter of law." *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 877 (3d. Cir 1995).

Excellency also argues Plaintiffs' attempted monopolization claim should be dismissed because Plaintiffs failed to allege they suffered an "antitrust injury" of the sort the Sherman Act is meant to prevent. (ECF No. 13-1 at 7 (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).) Excellency claims Plaintiffs have alleged only personal financial loss, and it argues this is not the sort of injury antitrust laws are meant to prevent. (*Id.* at 8 (citing *Broadcom Corp.*, 501 F.3d at 308 ("Conduct that merely harms competitors . . . while not harming the competitive process itself, is not anticompetitive.")).)

The Third Circuit has stated "[a]s a general matter, the class of plaintiffs capable of satisfying the antitrust-injury requirement is limited to consumers and competitors in the restrained market . . . and to those whose injuries are the means by which the defendants seek to achieve their anticompetitive ends." *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 172 (3d Cir. 2015) (quoting *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 102 (3d Cir. 2010)). The pivotal distinction between an injury that qualifies as an antitrust injury and one that does not is whether the "harm was the essential component of [d]efendants' anticompetitive scheme as opposed to an ancillary byproduct of it." *Id.* at 173. In *Hanover*, the Third Circuit determined a plaintiff sustained an antitrust injury in facts similar to those in this case. *Id.* at 173-74. The defendants, a ShopRite supermarket and its subsidiary, sought to prevent the plaintiff, a property developer, from obtaining planning approvals for land the plaintiff would lease to a Wegmans supermarket. *Id.* at 166. Although the defendants' anticompetitive actions were ultimately aimed at the Wegmans, the court found the developer's injuries, i.e., the costs of contesting the challenges to its application for approval, were a necessary part of the defendants'

9

plan. *Id.* at 174. Here, Plaintiffs have alleged Excellency and the other Defendants have inflicted injuries through the allegedly baseless challenges to Plaintiffs' planning applications. (ECF No. 1 ¶ 125.) As in *Hanover*, the injuries, as alleged in the Complaint, represent a key component of Defendants' efforts to discourage competition in violation of the Sherman Act and therefore constitute antitrust injuries.

Therefore, Excellency's Motion to Dismiss Plaintiffs' claim for attempted monopolization is **DENIED**.

### C. Conspiracy to Monopolize Claim (Count One)

A plaintiff asserting a claim for conspiracy to monopolize "must establish the existence of an agreement, sometimes also referred to as a 'conspiracy' or 'concerted action.'" *W. Penn Allegheny Health Sys., Inc.* 627 F.3d at 99 (citations omitted). An agreement consists of "a unity of purpose, a common design and understanding, a meeting of the minds, or a conscious commitment to a common scheme." *Id.* (citation omitted). A plaintiff can plead an antitrust conspiracy by alleging direct or circumstantial evidence. *Id.*

Here, Plaintiffs allege all three Defendants jointly challenged Plaintiffs' applications through a series of sham and baseless appeals before municipal bodies and the Superior Court. (ECF No. 1 ¶¶ 40-41, 44, 47-50, 54, 63-64, 66-67, 99, 109-110, 112.) Further, Plaintiffs allege Defendants retained the same expert witness and the same counsel. (*Id.* ¶¶ 63, 102-03.) These allegations of circumstantial evidence are sufficient to support a claim that Defendants possessed "a unity of purpose, a common design and understanding, a meeting of the minds, or a conscious commitment to a common scheme" to interfere with Plaintiffs' applications. *See W. Penn Allegheny Health Sys., Inc.*, 627 F.3d at 99.

Therefore, Excellency's Motion to Dismiss Plaintiffs' claim for conspiracy to monopolize is **DENIED**.

**D. New Jersey State Antitrust Claim (Count Two)**

The Third Circuit has observed "the New Jersey [Antitrust] Act itself mandates that it 'shall be construed in harmony with the ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate . . . a uniformity of those states which enact it.'" *St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 65 n.2 (3d Cir. 2009) (quoting N.J.S.A. § 56:9-18). Thus, insofar as Plaintiffs have successfully alleged claims under the New Jersey Antitrust Act for attempted monopolization and conspiracy to monopolize, Excellency's motion is **DENIED**.

**E. Tortious Interference with Prospective Economic Advantage Claim (Count Three)**

The four elements of a claim for tortious interference with prospective economic advantage under New Jersey law are: "(1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with 'malice,' (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages." *Varrallo v. Hammond Inc.* 94 F.3d 842, 848 (3d Cir. 1996) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989)). Defendants argue Plaintiffs cannot meet the pleading requirements of tortious interference with prospective economic advantage because Plaintiffs have not pled facts to show a connection between alleged interference and the loss of a prospective gain. (ECF No. 13-1 at 13.) Excellency states New Jersey is among a minority of jurisdictions that observe the "new business rule." (*Id.* (citing *RSB Lab. Servs., Inc. v. BSI Corp.*, 368 N.J. Super. 540 (App. Div. 2004)).) Under the new business rule, the prospective profits of a new business are deemed too remote and speculative to meet the legal standard of legal certainty. *In re Merritt Logan, Inc.*, 901 F.2d 349, 356 (3d Cir. 1990) (citing *Weiss v. Revenue Bldg. & Loan Ass'n.*, 116 N.J.L. 208 (1936)).

Plaintiffs argue neither Wawa nor QuickChek is a new business, because each is part of a national chain. (ECF No. 15 at 18.) Plaintiffs cite a New Jersey Tax Court case that found a new

11

business that is part of a large chain is considered integrated with those other businesses. (*Id.* at 17 (citing *Mayer & Schweitzer, Inc. v. Dir., Div. of Taxation*, 20 N.J. Tax 217, 227 (Tax 2002)).) This case has no bearing, though, on the new business rule in the context of contract law.

On the other hand, New Jersey courts have found the new business rule does not apply in cases where the business operator has experience in the sort of enterprise that alleges lost prospective profits. *RSB Lab. Servs., Inc.*, 368 N.J. Super. at 560-61. In *RSB Laboratory Services*, the Appellate Division determined the new business rule did not bar a claim for prospective profits when a plaintiff who ran a facility that drew blood from patients and sent the blood to outside labs opened its own facility to do the laboratory work itself. *Id.* The court distinguished this from two earlier cases in which the new business rule applied. In the first case, the new business rule applied to a plaintiff who transitioned from operating a rooming house to running a fifty-six room residential building. *Id.* at 561 (citing *Weiss*, 116 N.J.L. at 209). The new business rule also applied to a marine salvage company that sought to expand its operation to include a 100-ton-capacity-floating crane *Id.* at 561-62 (citing *Seaman v. U.S. Steel Corp.*, 166 N.J. Super. 467, 469 (App. Div.), *certif. denied*, 81 N.J. 282 (1979)). In contrast to the court in *RSB Laboratory Services*, the courts in *Seaman* and *Weiss* decided the new business rule applied and prospective profits could not be assumed, because the plaintiffs did not have experience operating businesses of such scale. *Id.* The court in *RSB Laboratory Services* distinguished those facts from the plaintiff's expansion of its blood drawing business to include lab analysis, which the court determined was related and not a "new business." *Id.*

Here, the facts more closely resemble those in *RSB Laboratory Services*. This Court takes judicial notice of the fact that both Wawa and QuickChek are chains that operate widely. Wawa operates more than five hundred retail locations with gas stations (About Us - Wawa,

https://www.wawa.com/about (last visited June 21, 2017)), while QuickChek has 140 locations in New York and New Jersey (QuickChek - History, http://quickchek.com/History (last visited June 21, 2017)). Given the extensive history Wawa and QuickChek have with operating businesses of the sort they propose to operate in Eatontown, Plaintiffs' prospective profits are not too remote in light of this history. The Court finds the new business rule does not apply to this case.

As Excellency does not argue Plaintiffs have failed to adequately plead the remaining elements for tortious interference with prospective economic advantage, Excellency's Motion to Dismiss the claim is **DENIED**.

### F. Tortious Interference with Contract (Count Four)

Plaintiffs allege Defendants tortuously interfered with Fidelity's contract with Wawa related to the Fidelity Project. (ECF No. 1 ¶¶ 144-47.) "To establish [tortious interference with an existing contract], a plaintiff must prove: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference. *DiGiorgio Corp. v. Mendez & Co., Inc.*, 230 F. Supp. 2d 552, 558 (D.N.J. 2002) (citing *Printing Mart-Morristown*, 116 N.J. at 751-52). Defendants challenge only the sufficiency of Plaintiffs' pleading of the second of the four elements, specifically, whether Defendants' alleged interference was intentional. (ECF No. 13-1 at 14.) Excellency challenges Plaintiffs' pleading of the second element and argues Plaintiffs do not allege Excellency desired to interfere with the agreement between Fidelity and Wawa, nor whether Excellency was even aware of the agreement. (*Id.*)

"Interference is *intentional* when 'the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'" *Cargill Global Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 575-76 (D.N.J. 2010) (quoting *Dello Russo v. Nagel*, 358 N.J. Super 254, 268 (App. Div. 2003) (quoting Restatement (Second) of Torts, § 766A,

13

comment e (1977))). A party acts with malice when there is no "justification or excuse" for the interference. *Id.* at 576 (citing *Singer v. Beach Trading Co.*, 379 N.J. Super. 63, 82 (App. Div. 2005) (quoting *Mandel v. UBS/PaineWebber, Inc.*, 373 N.J. Super. 55, 79-80 (App. Div. 2004))).

Here, Plaintiffs allege Defendants mounted baseless, bad-faith challenges to Fidelity's application for approval of a Wawa convenience store and gas station. (ECF No. 1 ¶¶ 37-41.) Because Fidelity, the applicant, sought approval to develop the property on behalf of Wawa, the prospective tenant, the Court infers Excellency was aware of an agreement between the parties whose development Defendants challenged. Plaintiffs allege throughout the Complaint Defendants acted intentionally to delay Plaintiffs' projects in an effort to prevent them from entering the market. (*Id.* ¶¶ 2, 4, 115, 123-24, 127, 129, 134-35, 141, 146.) Plaintiffs' recount Defendants' unsuccessful efforts to challenge the Fidelity Project in particular. (*Id.* ¶¶ 37-75.) The Court finds Plaintiffs pled sufficient facts to support their claim, Excellency intended to interfere with Fidelity and Wawa's contract, and that the interference was with malice. *DiGiorgio Corp. v*, 230 F. Supp. 2d at 558 (citing *Printing Mart-Morristown*, 116 N.J. at 751-52).

Therefore, Excellency's Motion to Dismiss the claim for tortious interference with contract is **DENIED**.

### G. Civil Conspiracy (Count Five)

Plaintiffs assert a claim against Excellency and its fellow Defendants for civil conspiracy. (ECF No. 1 ¶¶ 149-51.) Under New Jersey law, a plaintiff alleging civil conspiracy must prove "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular, N.A. v. Gandi*, 184 N.J. 161, 177 (2005) (citation omitted). Excellency argues Plaintiffs have not alleged any facts to support their civil conspiracy claim. (ECF No. 13-1 at 15.)

Plaintiffs allege all three Defendants jointly challenged Plaintiffs' applications in bad faith, thereby tortuously interfering with Plaintiffs' prospective economic advantage and contract. (ECF No. 1 ¶¶ 2, 4, 115, 123-24, 127, 129, 134-35, 141, 146.) Further, Plaintiffs allege Defendants retained the same expert witness and the same counsel. (*Id.* ¶¶ 63, 102-03.) At this stage of the proceedings, these allegations are sufficient to support a claim that Excellency and the other Defendants acted in concert to commit an unlawful act, i.e. to violate antitrust law by opposing Plaintiffs' applications through sham litigations, and by tortuously interfering with Plaintiffs' prospective economic advantage and contract.

Therefore, Excellency's Motion to Dismiss Plaintiff's claim for civil conspiracy is **DENIED**.

## IV. DECISION—PLAINTIFFS' MOTION TO DISMISS

### A. Kennedy's Counterclaim for Malicious Use of Process

Kennedy asserts a counterclaim for malicious use of process, alleging the "Complaint is motivated by malice" because Defendants merely sought to exercise their constitutional rights by challenging Plaintiffs' applications by way of "the constitutionally protected avenues of judicial and governmental redress." (ECF No. 12 ¶¶ 7-8.)

To assert a claim for malicious use of process, a plaintiff "must allege 'that the original suit (1) was instituted without reasonable or probable cause; (2) was motivated by malice; (3) terminated favorably to [the plaintiff]; and (4) resulted in a "special grievance" to the plaintiff.'" *Hassoun v. Cimmino*, 126 F. Supp. 353, 369 (D.N.J. 2000) (quoting *Giri v. Rutgers Cas. Ins. Co.*, 273 N.J. Super. 340, 347 (App. Div. 1988)). As to the first element—probable cause—the Supreme Court of New Jersey has stated "[p]robable cause is a matter of law to be determined by the court, and it is only submitted to the jury if the facts giving rise to probable cause are themselves in

15

dispute." *LoBiondo v. Schwartz*, 199 N.J. 62, 93 (2009) (citation omitted). A court should apply a reasonable person standard to determine whether a plaintiff had an "honest belief" in the allegations asserted in the lawsuit. *Id.* (citations omitted).

Here, neither Kennedy nor Plaintiffs argue the facts giving rise to probable cause are in dispute, so based on the undisputed facts the Court has determined Plaintiffs properly alleged there was probable cause to assert their claims. Specifically, the Court has determined Plaintiffs have properly alleged claims for attempted monopolization, conspiracy to monopolize, tortious interference with prospective economic advantage, and tortious interference with contract. Whether Plaintiffs prosecute their claims successfully is a question that will bide discovery and later stages of litigation. But insofar as Plaintiffs have stated plausible claims for relief, the Court finds a reasonable party confronted with the facts of this lawsuit would have had an honest belief in the allegations asserted in the Complaint. *Id.* As the Court finds Plaintiffs' had probable cause to bring the lawsuit, Kennedy is unable to meet the first element of malicious use of process and it is not necessary to analyze the remaining elements.

Therefore, Plaintiffs' Motion to Dismiss Kennedy's counterclaim for malicious use of process is **GRANTED**.

V. CONCLUSION

For the reasons set forth above, Excellency's Motion to Dismiss (ECF No. 13-1) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claim for monopolization pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, and their claim for monopolization pursuant to the New Jersey Antitrust Act, N.J.S.A. § 56:9-1, *et seq.*, are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' Motion to Dismiss (ECF No. 16) is **GRANTED**. Kennedy's Counterclaim for malicious use of process is **DISMISSED WITH PREJUDICE**. An appropriate Order will follow.

**Date: June 22, 2017**　　　　　　　　　　*/s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**